UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                            Case No. 8:13-cr-00013-T-23MAP

MICHAEL JOSEPH HARPER,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is *pro se* Defendant Michael Harper's post-conviction motion for return of property (doc. 85), the Government's response (doc. 87), and the investigating agent's affidavit (doc. 92).[1] Under Rule 41(g), Fed. R. Crim. P., Defendant requests the return of approximately $20,000 in cash law enforcement seized from his room when executing his arrest warrant. He argues that because the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF, the investigating agency) has not forfeited the money, the Court should return it to him. The Government responds that the cash ($19,381, to be exact) is mainly ATF funds undercover agents provided to Harper in exchange for firearms and drugs.[2] Any remaining amount, according to the Government, is drug proceeds. After reviewing the record and filings, I recommend that the Court deny Defendant's motion.

---

[1] The District Judge referred the motion to me for a report and recommendation (doc. 88). I ordered the Government to supplement its response with an affidavit from the investigating agent (doc. 89). A hearing is not necessary because, for the reasons stated here, it is apparent Defendant is not lawfully entitled to possess the property. *See United States v. Felici*, 208 F.3d 667, 670 (8th Cir. 2000).

[2] The Government has provided different figures for the exact amount of buy money. In its original response, the Government states law enforcement paid Defendant $16,468 in government funds over the seven-month investigation. In the investigating agent's affidavit, he provides two figures for the amount of ATF money involved in the case: $17,089 and $17,078.

A.     *Background*[3]

Between May and November 2012, undercover ATF agents met with Defendant 34 times to buy firearms and drugs; in all, law enforcement paid Defendant approximately $17,000 in Government funds (doc. 87 at 1).  On January 8, 2013, a grand jury returned a 12-count indictment, charging Harper and his co-Defendants in this case with firearms and narcotics-related offenses (doc. 1).  Specifically, Harper was charged with distribution of cocaine in counts one, two, and four; felon in possession of a firearm in counts three, five, seven, eight, nine, ten, and twelve; and transferring and aiding and abetting the transfer of a short barrel shotgun in count six.

On January 16, 2013, to execute his federal arrest warrant, officers went to Harper's residence (which was actually a room he occupied at his grandfather's house) (doc. 92 at 2).  Harper was not there, but his grandfather, George Harper, allowed the officers to enter (*Id.*).  On Defendant's bedroom floor, officers saw an open duffle bag filled with cash (doc. 87 at 2).  Also on the bedroom floor were torn baggies similar to the type used for distributing drugs (doc. 92 at 2).  Harper's grandfather and mother denied ownership of the cash, agreeing it was most likely Defendant's (*Id.*).  The officers seized the cash as evidence.  Officers eventually found and arrested Defendant.  Post-*Miranda*, Defendant asked if the officers had found his money (doc. 92 at 2).  Harper said he did not have a job and could not get a job because he owed child support (doc. 87-1 at 3; doc. 92 at 2).  He estimated the duffle bag contained between $15,000 and $16,000 in cash, which (according to him) consisted of money from his grandfather (an unspecified amount) and proceeds of his school loans (about $7,000) (*Id.*).  He admitted that between $6,000 and $7,000 was from

---

[3] This information is gleaned from the indictment, the plea agreement, and other court filings, as well as the agent's affidavit in response to Defendant's Rule 41(g) motion (doc. 92).

undercover agents (*Id*.).

In May 2013, Defendant pled guilty to counts six (transferring an unregistered firearm) and eight (felon in possession of firearms) (doc. 62). The forfeiture section of his plea agreement does not include the currency (*Id*. at 9-12). This is because, under the forfeiture provisions associated with Defendant's crimes of conviction (18 U.S.C. § 924(d)(1), 28 U.S.C. § 2461(c), and 26 U.S.C. § 5872), the Government can forfeit firearms and ammunition only. To address the issue of the seized cash, the Government forwarded his counsel a stipulation of forfeiture for Defendant's signature (doc. 87-2). Defendant did not agree to the stipulation, apparently, because the Government never received an executed copy of it. In July 2013, Harper was sentenced to 100 months in jail for each count (doc. 77). The judgment does not mention forfeiture (*Id*.). Although the cash is still in the possession of the ATF Asset Forfeiture Division, it has not been forfeited (doc. 92 at 1).

    B.    *Analysis*

Rule 41(g) provides:

> **Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district court where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must then return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

A motion to return seized property under Rule 41(g) is a motion in equity; courts consider equitable considerations in making a ruling. *See United States v. Watkins*, 210 F. App'x 891, 894 (11th Cir. 2006). "When an owner invokes Rule 41(g) after the close of all criminal proceedings, the court treats the motion for return of property as a civil action in equity." *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005). To invoke Rule 41(g), the movant must first show that he had a

possessory interest in the seized property. *Id*. Second, "in order for a district court to grant a Rule 41(g) motion, the owner of the property must have clean hands." *Id*. (citation omitted). The doctrine of unclean hands is an equitable one that permits courts to withhold equitable relief "if such relief would encourage or reward illegal activity." *United States v. Felici*, 208 F.3d 667, 670-71 (8th Cir. 2000); *see also United States v. Garcon*, 406 F. App'x 366, 369 (11th Cir. 2010) (citation omitted) (stating courts can deny Rule 41(g) motions if "the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture, or the government's need for the property as evidence continues."). Nonetheless, "if the government wishes to retain the property, it must have and state a legitimate reason for doing so." *Id*. (*citing United States v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001)); *United States v. Simon*, No. 2:09-cr-32-FtM-29DNF, 2012 WL 207017, at *2 (M.D. Fla. Jan. 24, 2012).

Here, the equities are not in Defendant's favor. Even assuming Defendant had a possessory interest in the currency when it was seized (the first hurdle), he stumbles over the second one: Defendant does not offer any evidence that his hands are clean. On the other hand, the Government's affidavit convinces me (1) Defendant had no source of income other than his illegal activities, and (2) most of the seized currency was government buy money. Although the currency has not been forfeited, this does not mandate the conclusion that it should be returned to Defendant. No one has a legal interest in drug proceeds. *Cf.* 21 U.S.C. § 881(a) (proceeds from the sale of drugs are subject to forfeiture and "no property right shall exist in them."); *United States v. Rodriguez-Aguirre*, 414 F.3d 1177, 1185 (10th Cir. 2005) (surveying forfeiture law and deciding government may assert right to seized property even if it can no longer initiate forfeiture proceedings, if to return property would compensate defendant with fruit of his criminal conduct); *Arevalo v. United States*,

4

No. 05-110, 2011 WL 442054, at *6-7 (E.D. Pa. Feb. 8, 2011) (denying Rule 41 motion for return of currency administratively forfeited by DEA under § 881, even though claimant did not receive notice of forfeiture and should have, because even in absence of forfeiture, claimant had no right to drug proceeds). There is nothing in the record to show that the source of the seized currency is anything other than government buy money for firearms and drugs and proceeds from other illegal drug transactions. As for Defendant's statement to police after his arrest that some of the money was a student loan, this defies logic: student loan proceeds are typically paid directly to the school. What is more, according to the agent's affidavit, officers found the money in close proximity to drug paraphernalia (the baggies) (doc. 92 at 2). Under these circumstances, it would be inequitable to return to Harper the fruits of his illegal activity. *See Watkins*, 210 F. App'x at 894-95.

But what happens to the money? Harper is not entitled to its return, certainly not via his Rule 41(g) motion. To hold otherwise does not square with federal law, under which "no property right shall exist in . . . moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance," "proceeds traceable to such an exchange," or "moneys . . . used or intended to be used to facilitate any violation of [drug trafficking laws]." 21 U.S.C. § 881(a)(6). The Government, on the other hand, has not taken steps to forfeit or otherwise settle the issue of title to the currency. And it could not do so in this context: "A Rule 41(g) proceeding does not provide the government with the opportunity to forfeit property, but only allows a defendant to seek its return." *Simon*, 2012 WL 207017, at * 2.

Nonetheless, "even when the government is foreclosed from perfecting its title to drug-related currency via forfeiture proceedings, or fails to pursue forfeiture in the first place, the government may retain the property until the claimant filed an equitable action or motion and

5

demonstrates that he is lawfully entitled to the return of the property. In response to such an action or motion, the government may still establish its ownership by demonstrating the property at issue is § 881(a) currency." *Babb v. D.E.A.*, 146 F. App'x 614, 620 (4th Cir. 2005). I agree with this reasoning.

In the alternative, if the District Judge disagrees with this result, I recommend that the Court remit the funds to the United States Treasury as reimbursement of the costs of Defendant's court-appointed counsel, in compliance with 18 U.S.C. § 3006A(f) and Eleventh Circuit case law interpreting this provision, rather than return the funds to Defendant. *See United States v. Homrighausen*, 366 F. App'x 76, *77-79 (11th Cir. 2010).

C.   Conclusion

Upon consideration, I recommend that Plaintiff's motion for return of property (doc. 85) be DENIED.

IT IS SO RECOMMENDED in Tampa, Florida on November 5, 2014.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).